**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN BERNAT,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>CALIFORNIA CITY POLICE DEPARTMENT, et al.,<br><br>　　　　　　　Defendants. | 1:10-cv-00305-OWW-JLT<br><br>MEMORANDUM DECISION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 28) |

## I. INTRODUCTION.

Plaintiff John Bernat brings this action pursuant to 42 U.S.C. § 1983 against the California City Police Department ("the Department"), Officer Standish Knowlton ("Knowlton"), Officer Eric Hurtado ("Hurtado"), and California City ("the City") (collectively "Defendants").

Defendants filed a motion for summary judgment on January 10, 2011. (Doc. 28). Plaintiff filed opposition on January 27, 2010. (Doc. 34). Defendants filed a reply on February 7, 2011. (Doc. 38).

## II. FACTUAL BACKGROUND.

At approximately 2:30 p.m. on August 8, 2009, Plaintiff was at Central park in the City of California feeding geese and observing the pool area. After standing by a fence adjacent to the pool for

1

a few minutes, a lifeguard approached Plaintiff and asked him if he knew anyone in the pool.  Plaintiff responded "no" and asked the lifeguard "why do you ask?"  The lifeguard stated that "some people here...are wondering why you are here."  Plaintiff responded that he was "just here to enjoy the park and all its facilities."  Three or four minutes after his encounter with the lifeguard, Plaintiff walked back to his truck and sat inside the cab.  Five minutes later, Plaintiff saw the police in his mirror.

Officer Knowlton was dispatched to Central Park at 2:46 p.m. in response to a call regarding a suspicious male looking at children in the pool.  When Knowlton arrived at Central Park, he exited his vehicle and began a foot patrol of the area.  The parties dispute how Knowlton came to locate Plaintiff, but it is undisputed that Knowlton walked up to Plaintiff's truck and saw Plaintiff moving his head in a fast motion looking at subjects in numerous areas of the park.

The parties dispute what happened when Knowlton engaged Plaintiff. According to Plaintiff, upon seeing Knowlton, Plaintiff rolled down his window and asked Knowlton if he was parked in the wrong place.  Plaintiff then asked why the officer was at Central Park, and Knowlton responded that there was a report of a suspicious person.  At some point, Plaintiff made the following statements: "this is a public park," "can't I sit here," and "this is a free country isn't it."

According to Defendants, Knowlton contacted Plaintiff by knocking on the driver's side window and gestured to him to roll the window down.  Knowlton asked Plaintiff what was going on, and Plaintiff immediately became agitated and asked the officer what he

**2**

wanted.  Plaintiff began yelling and said "this is a public park," "can't I sit here," and "this is a free country isn't it." Plaintiff then pointed his left index finger close to Knowlton's face.  Knowlton advised Plaintiff to be aware of where he waived his hand, at which point Plaintiff got extremely upset and swung his closed left fist in a backward motion towards Knowlton. Knowlton made a radio broadcast of 148, a common term used when an officer needs assistance.  Plaintiff concedes he made some hand gestures when speaking to Knowlton but denies ever waiving his hand toward Knowlton with a closed fist.

   The parties agree that Knowlton grabbed Plaintiff's left wrist and attempted to place him in a control hold, and that Plaintiff pulled his arm away into the vehicle and rolled the window up. Knowlton attempted to open the driver's side door of Plaintiff's truck about two or three times in order to remove Plaintiff from the truck, but Plaintiff locked the door.  Plaintiff placed his truck in reverse and moved his vehicle approximately 6 to 7 feet away from Knowlton's patrol vehicle.  As Plaintiff was reversing the truck, he rolled his window down half way and began yelling that he was going to the police station to talk to Knowlton's supervisor.  Knowlton made a radio broadcast of a vehicle attempting to leave.

   Officer Hurtado arrived at the scene as Plaintiff was attempting to leave.  Hurtado saw Plaintiff reversing his truck towards Knowlton's patrol car.  The parties dispute Knowlton's location when Hurtado arrived.  Hurtado blocked Plaintiff's truck by parking his patrol car in front of it, pointed his duty weapon at Plaintiff, and ordered Plaintiff to stop.  Knowlton and Hurtado

**3**

ordered Plaintiff to exit his vehicle numerous times.  Hurtado ran to the front driver's side of the truck.

The parties dispute what happened in the moments before and after Plaintiff exited his truck. Plaintiff contends he did not hear any orders to get out of his truck.  Plaintiff states that he stopped reversing and exited his vehicle after seeing Hurtado pointing his gun at him.  According to Plaintiff, he exited the truck, turned, and placed his hands on the truck without being instructed to do so.

According to Defendants, Knowlton repeatedly ordered Plaintiff to open his locked door before Plaintiff complied.  Knowlton opened the driver's side door and Plaintiff exited the vehicle.  When Plaintiff exited his vehicle, Hurtado ran to the back of the truck because he could not get a good visual of the driver.  Knowlton ordered Plaintiff to put his hands up, turn around, interlock his fingers, and begin walking backwards towards Knowlton.  Plaintiff did not comply and continued yelling at Knowlton.  Plaintiff raised his hands to near his shoulder area.  Knowlton warned Plaintiff that he would be tased for failure to comply with his orders.

Knowlton pointed his taser at Plaintiff and repeated his orders three to five times.  Plaintiff continued to ask why he was being stopped.  Hurtado also ordered Plaintiff to turn around and put his hands on his head.  Plaintiff partially turned towards the side of his truck.  Plaintiff began to put his hands up towards his head but did not put his hands all the way up.  Hurtado then attempted to place a control hold on Plaintiff in order to place handcuffs on him.  Plaintiff turned around, causing Hurtado to lose his grip.  A second or two later, Knowlton deployed his taser with

**4**

a single five second electronic burst. Plaintiff fell to the ground and was placed in handcuffs by Hurtado. Hurtado arrested Plaintiff for violation of California Penal Code section 148.

### III. **LEGAL STANDARD**.

Summary judgment/adjudication is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted).

Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). With respect to an issue as to which the non-moving party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.

When a motion for summary judgment is properly made and supported, the non-movant cannot defeat the motion by resting upon the allegations or denials of its own pleading, rather the "non-moving party must set forth, by affidavit or as otherwise

5

provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Soremekun*, 509 F.3d at 984. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[A] non-movant must show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in his favor." *Id*. (emphasis in original). "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute exists, a district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

## IV. DISCUSSION.

### A. Plaintiff's Federal Claims

Plaintiff contends his arrest, and the force used to effect it, violated his Fourth Amendment rights. Defendants contend they had probable cause to arrest Plaintiff for violation of California Penal Code section 148, which provides in part:

> Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

**6**

Cal. Pen. Code § 148(a)(1).

The evidence is in conflict as to what Plaintiff's actions were on the arrival of the officers. Accepting Plaintiff's version of the facts as true, Plaintiff was backing his vehicle up and did not hear a command until Plaintiff's vehicle pulled in front of his; he then stopped and exited the vehicle. This leaves in dispute whether Plaintiff was attempting to leave and was subject to extreme force. Whether Plaintiff was subject to force when he later turned and faced Hurtado in response to Hurtado's attempt, without warning, to grab him is also a question that can only be addressed after factual disputes are resolved.

**1. Defendant Hurtado's Use of Force**

Allegations of excessive force are examined under the Fourth Amendment's prohibition against unreasonable seizures. *E.g. Graham v. Connor,* 490 U.S. 386, 394 (1989)*; Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001). Once an officer has probable cause to believe a crime has been committed, the officer may use reasonable force necessary to effect an arrest. *See, e.g., Graham*, 490 U.S. at 396 ("the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"); *see also Brooks v. City of Seattle*, 599 F.3d 1018, 1025 (9th Cir. 2010) (same).

Excessive force inquiries require balancing of the amount of force applied against the need for that force under the circumstances. *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003). Use of force violates an individual's constitutional rights under the Fourth Amendment where the force used was objectively unreasonable in light of the facts and circumstances confronting

**7**

them.  *E.g. Graham*, 490 U.S. at 397.  Three "core factors" guide inquiries into the government's interest in the use of force: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Bryan v. MacPherson*, --F.3d-- (9th Cir. 2010); 2010 U.S. App. LEXIS 25895 * 14-15; 2010 WL 4925422 (citing *Graham*, 490 U.S. at 396).

Accepting Plaintiff's version of the facts as true, when Hurtado arrived on the scene, he observed Plaintiff reversing his vehicle while Knowlton was on the side of the vehicle.  Whether these facts are sufficient to establish probable cause believe Plaintiff was subject to arrest for not complying with Knowlton's commands cannot be determined on summary judgment.[1]  Plaintiff's evidence shows that Hurtado drew his firearm and pointed it at Plaintiff and later attempted to place a control hold on Plaintiff so that he could be handcuffed.  Whether this force was justified depends on whose version of the facts is accepted. Hurtado is not entitled to summary judgment on Plaintiff's excessive force claim, as there is sufficient evidence on the record to permit a finder of fact to conclude that Hurtado's pointing of his weapon at Plaintiff and attempt to handcuff Plaintiff was a reasonable use of force under all the circumstances.

Hurtado is not entitled to qualified immunity as a matter of law.  Government officials are generally shielded from liability

---

[1] The existence of probable cause is relevant to excessive force inquiries, but it is not dispositive.  *See Brooks*, 599 F.3d at 1022.

**8**

for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). At the time of Plaintiff's arrest in 2009, it was clearly established that using more force than was necessary when no justification for arrest existed violated the Fourth Amendment. Whether it was necessary to point a weapon at Plaintiff and to use a control hold to place Plaintiff in handcuffs in connection with his arrest is disputed.

### 2. Defendant Knowlton's Use of Force

The complaint alleges Knowlton's use of a taser on Plaintiff constituted excessive force. Knowlton contends that use his of a taser on Plaintiff was reasonable. Alternatively, Knowlton argues that to the extent his use of a taser on Plaintiff violated Plaintiff's constitutional rights, he is entitled to qualified immunity. Accepting Plaintiff's version of the facts, Knowlton's use of force was not justified by the governmental interest implicated by the situation. Plaintiff avers that he turned around when he felt Hurtado attempt to place him in a control hold because Plaintiff was not aware he was being placed under arrest. Plaintiff also contends that at the time Knowlton deployed his taser, Plaintiff had fallen backwards against his truck as a result of being pushed by Hurtado.

Three "core factors" guide inquires into the government's interest in the use of force: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight.

9

*Bryan*, 2010 U.S. App. LEXIS 25895 * 14-15. The balance of these factors cannot be determined as a matter of law in light of the disputed facts of this case.

The crime Plaintiff was officially arrested for–-resisting a peace officer-- is not a serious crime under the law of the Ninth Circuit. *See Brooks*, 599 F.3d at 1028 ("Although obstructing an officer is a more serious offense than [] traffic violations, it is nonetheless not a serious crime"); *accord Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007) (crime of obstructing an officer not a serious offense sufficient to justify severe force). This factor favors Plaintiff. Whether Plaintiff was or was not resisting arrest is factually disputed. According to Plaintiff, he was unaware that he was being arrested and merely turned around to see why he was being touched. Finally, the third and most important factor--whether Plaintiff posed an immediate threat to the safety of the officers or others--depends on resolution of factual disputes. Questions of fact exist regarding whether Plaintiff attempted to strike Knowlton during the initial encounter, whether Plaintiff backed his truck up towards Knowlton, whether there were any bystanders in the vicinity,[2] and whether Plaintiff complied with the officer's instructions to turn around and place his hands on his head. These factual questions must be resolved in order to determine the extent to which a reasonable

---

[2] Defendants' statement of undisputed fact number 16 states in part "When Lt. Hurtado arrived at the park, he saw...two children on the landing platform by the window area." Although Plaintiff does not dispute the location of the children, Defendants' statement is so inherently vague that it does not permit analysis of whether the children were close enough to be at risk of harm. Defendants' statement of undisputed facts does not indicate where the "landing platform by the window area" was located relevant to the position of Plaintiff's vehicle.

**10**

officer would have believed that Plaintiff posed an immediate threat to the safety of the officers or others.

Factual disputes also preclude summary judgment on the issue of Knowlton's entitlement to qualified immunity. In 2010, the Ninth Circuit held that use of a taser in dart mode constitutes intermediate non-deadly force. *Bryan,* 2010 U.S. App. LEXIS 25895 *14. Prior to 2010, however, the quantum of force entailed by a taser strike was not clearly established. *See id*. at *33-35 (holding that officer was entitled to qualified immunity for unconstitutional use of taser). Nevertheless, it has long been settled that gratuitous use of force against a compliant, non-threatening suspect violates the Fourth Amendment.

In *Bryan*, the Ninth Circuit held that an officer's unconstitutional use of a taser on a stationary, unarmed subject stopped for a minor traffic violation was a reasonable mistake of law that was not clearly established due to the state of the law in the Ninth Circuit in 2009. *Id*. *Bryan* was decided June 18, 2010; it cannot serve as authority for clearly established law in this case which occurred before the *Bryan* decision was issued.[3] The Ninth Circuit summarized the relevant facts of *Bryan* as follows:

> Bryan was stopped at an intersection when Officer MacPherson, who was stationed there to enforce seatbelt regulations, stepped in front of his car and signaled to Bryan that he was not to proceed... Officer MacPherson requested that Bryan turn down his radio and pull over to the curb. Bryan complied with both requests, but as he pulled his car to the curb, angry with himself over the prospects of another citation, he hit his steering wheel

---

[3] The first Ninth Circuit decision in *Bryan* was entered on October 9, 2009 *Bryan v. McPherson*, 590 F.3d 767 (9th Cir. 2009). A second decision was entered on June 18, 2010. *Bryan v. MacPherson*, 608 F.3d 614 (9th Cir. 2010). A third amended opinion in *Bryan* was entered on November 30, 2010. *Bryan v. Macpherson*, 2010 U.S. App. LEXIS 25895.

**11**

> and yelled expletives to himself. Having pulled his car over and placed it in park, Bryan stepped out of his car.
>
> ...Bryan was agitated, standing outside his car, yelling gibberish and hitting his thighs, clad only in his boxer shorts and tennis shoes...Bryan did not verbally threaten Officer MacPherson and, according to Officer MacPherson, was standing twenty to twenty-five feet away and not attempting to flee. Officer MacPherson testified that he told Bryan to remain in the car, while Bryan testified that he did not hear Officer MacPherson tell him to do so. The one material dispute concerns whether Bryan made any movement toward the officer. Officer MacPherson testified that Bryan took "one step" toward him, but Bryan says he did not take any step, and the physical evidence indicates that Bryan was actually facing away from Officer MacPherson. Without giving any warning, Officer MacPherson shot Bryan with his taser gun. One of the taser probes embedded in the side of Bryan's upper left arm. The electrical current immobilized him whereupon he fell face first into the ground, fracturing four teeth and suffering facial contusions.

608 F.3d 618-19.

Accepting Plaintiff's version of the facts, Knowlton's use of his taser was not, as a matter of law, as reasonable as the taser strike at issue in *Bryan*. According to Plaintiff, he was not advancing toward the officers, was not agitated or shouting gibberish, and was complying with the officer's instructions at the time he was tased. Whether Knowlton is entitled to qualified immunity cannot be determined as a matter of law before factual disputes are resolved.

**B. State Law Claims**

**1. Assault and Battery**

Plaintiff asserts a claim for assault and battery against Knowlton and Hurtado based on his allegation that the officers "placed plaintiff in immediate fear of death and severe bodily harm by wrongfully detaining plaintiff and wrongfully incarcerating plaintiff without probable cause or any just provocation." (Comp.

**12**

at 8). In California, the elements of civil battery are: (1) the defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) the plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff. *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 526-27 (Cal. Ct. App. 2009).

In order to prevail on a civil battery claim against a police officer arising out of force used to effect an arrest, a plaintiff must establish that the officer used unreasonable force. *E.g. Yount v. City of Sacramento*, 43 Cal. 4th 885, 902 (Cal. 2008); *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1273 (Cal. Ct. App. 1998).

Whether Defendants' use of force on Plaintiff was reasonable requires resolution of several factual disputes that preclude summary judgment. As discussed above, questions of fact exist regarding whether Plaintiff attempted to strike Knowlton during the initial encounter, whether Plaintiff backed his truck up towards Knowlton, whether there were any bystanders in the vicinity, and whether Plaintiff complied with the officer's instructions to turn around and place his hands on his head. These factual questions must be resolved in order to determine the extent to which a reasonable officer in Defendants position would have believed that Plaintiff posed an immediate threat to the safety of the officers or others. Defendants' motion for summary judgment on Plaintiff's assault and battery claim is DENIED.

**2. California Civil Code section 52.1 Claim**

California Civil Code section 52.1 allows a suit for damages "[i]f a person or persons, whether or not acting under color of

**13**

law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code 52.1.

Whether Defendants violated Plaintiff's constitutional rights cannot be determined on summary judgment. Summary judgment is DENIED. Summary judgment must also be DENIED as to the city; under California law, a governmental entity can be held vicariously liable under California Civil Code section 52.1 when a police officer acting in the course and scope of employment uses excessive force. *E.g., Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 215 (Cal. 1991) ("Since the enactment of the California Tort Claims Act in 1963 (§ 810 et seq.), a governmental entity can be held vicariously liable when a police officer acting in the course and scope of employment uses excessive force or engages in assaultive conduct."); *accord M.P. v. City of Sacramento*, 177 Cal. App. 4th 121, 129-130 (Cal. Ct. App. 2009) (citing *Mary M* in setting forth principals of vicarious liability of public entities under California law); Cal. Gov. Code 815.2 ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative").

///
///

**14**

### 3. Negligence Claim

Defendants' motion for summary judgment on Plaintiff's negligence claim is DENIED for all the reasons stated above. *See Bulkley v. Klein,* 206 Cal. App. 2d 742, 751 (Cal. Ct. App. 1962) (reasonableness inquiry under Fourth Amendment does not differ essentially from determination of negligence).

### 4. Negligent Hiring and Supervision Claim

The complaint advances the following allegations in support of Plaintiff's negligent hiring and supervision claim:

> At all times herein mentioned, defendants CITY, by and through its supervisory employees and agents, (KNOWLTON & HURTADO) and DOES 1 through 10, inclusive, has and had a mandatory duty of care to properly and adequately hire, train, retain, supervise, and discipline its police officers so as to avoid unreasonable risk of harm to citizens. With deliberate indifference, defendant CITY and DOES 1 through 10, inclusive, failed to take necessary, proper, or adequate measures in order to prevent the violation of plaintiff's rights and injury to said plaintiff. CITY and DOES 1 through 10, inclusive, breached their duty of care to citizens in that CITY and DOES 1 through 10, inclusive, failed to adequately train its police officers, including defendants KNOWLTON, HURTADO and DOES 1 through 10, inclusive, in the proper and reasonable methods of making arrests, and treating citizens in a manner that is not discriminatory and/or by use of excessive force, and/or failed to have adequate policies and procedures regarding the proper and reasonable use of force, the proper and reasonable making of arrests, and treating citizens in a manner that is not discriminatory or uses excessive force to complete the arrest. This lack of adequate supervisorial training, and/or policies and procedures demonstrates the existence of an informal custom or policy of promoting, tolerating, and/or ratifying the continuing failure to make proper and reasonable arrests by police officers employed by CITY, and continuing racially discriminatory behavior towards citizens by police officers employed by the CITY.
>
> As a proximate result of defendants, and each of their negligent conduct, plaintiff suffered severe physical injury and severe emotional and mental distress, all of which have had a traumatic effect on plaintiffs emotional tranquility, causing him to suffer other losses and damages as herein alleged.

**15**

(Comp. at 10-11). The complaint fails to state sufficient facts to establish a negligent hiring policy, nor have any facts or factual allegations been submitted regarding the City's hiring policies other than legal conclusions. With respect to Plaintiff's assertion that the City negligently trains and supervises its employees, undisputed evidence establishes that Plaintiff's claim lacks merit.[4]

Undisputed evidence establishes that the City has polices regarding use of force, disciplinary procedures, field training, and taser guidelines (Doc. 42, Plaintiff's Response to Def's. SUF 41). It is undisputed that the City's use of force policy requires officers to consider, among other things, the amount and nature of resistance observed or perceived, the degree to which the suspect resists arrest or detention, and the safety of the officers presently engaged in the arrest attempt. (Plaintiff's Response to Def's. SUF 43). It is undisputed that Knowlton and Hurtado received POST training from the City. (Plaintiff's Response to Def's. SUF 42).

Plaintiff points to the following evidence in support of his negligent supervision claim: (1) Knowlton's alleged use of excessive force; (2) Hurtado's alleged lack of understanding between objective and subjective facts; and (3) the failure of the

---

[4] The court need not discuss the potential legal infirmities of Plaintiff's claim, which have not been adequately briefed by Defendants. *See, e.g., de Villers v. County of San Diego*, 156 Cal. App. 4th 238, 255-56 (Cal. Ct. App. 2007) ("a direct claim against a governmental entity asserting negligent hiring and supervision, when not grounded in the breach of a statutorily imposed duty owed by the entity to the injured party, may not be maintained."). Although Defendants do note that common law negligence theories are not cognizable under California's Tort Claims Act, (MSJ at 20), Defendants do not refute Plaintiff's conclusory allegation that the City was under mandatory duties to exercise due care in training and hiring personnel.

**16**

Department to investigate Plaintiff's complaint and failure to reprimand the officers. (Doc. 35, Opposition at 23-24). With respect to Knowlton's use of force, uncontroverted evidence establishes that the City's training policies teach officers the appropriate factors to consider before employing force: the amount and nature of resistance observed or perceived, the degree to which the suspect resists arrest or detention, and the safety of the officers presently engaged in the arrest attempt. (Plaintiff's Response to Def's. SUF 43). The fact that Knowlton may have violated Plaintiff's constitutional rights does not support an inference of negligent training in light of the record.

Plaintiff's allegation regarding Hurtado's understanding of objective versus subjective facts is a red herring. This is an issue raising a conclusion of law bearing on a retrospective legal test of the officer's conduct. It is of no moment that Hurtado allegedly "did not know the difference between objective and subjective facts." (Opposition at 24). Determining the quantum of force justified by a given set of circumstances does not require than an officer distinguish between objective and subjective facts, and the City's purported failure to train Hurtado in this regard has no causal link to the only cognizable harm Plaintiff has alleged: excessive force by Knowlton. Defendants' motion for summary judgment is GRANTED on Plaintiff's claim for negligent supervision.

**ORDER**

1) Defendants' motion for summary judgment on Plaintiff's section 1983 claims is DENIED;

2) Defendants' motion for summary judgment on Plaintiff's

**17**

assault and battery claim is DENIED;

3) Defendants' motion for summary judgment on Plaintiff's claim for negligence is DENIED;

4) Defendants' motion for summary judgment on Plaintiff's claim under California Government Code section 52.1 is DENIED;

5) Defendants' motion for summary judgment on Plaintiff's claim for negligent supervision and hiring is GRANTED as to all Defendants.

IT IS SO ORDERED.

**Dated:   March 21, 2011**                              **/s/ Oliver W. Wanger**
                                                  UNITED STATES DISTRICT JUDGE